GAstON, J.
 

 By the acts of 1819 c. 997, 1820 c. 1060, and 1821, c. 1115, directing the manner of selling the lands acquired by the State under recent treates with the Cherokee Indians, it was enacted that every purchaser should pay down at the time of sale one eighth part of the purchase money, and give bond and security for the payment of the balance in four equal annual instalments ; and that in no
 
 *42
 
 instance a grant should issue to the purchaser until the whole pj.t¡le pupcPase money should have been paid; and in case of failure to pay the whole when due, and if the money could not °^ta^ne<^ by a judgment on the bond, that the land should revert to the State and be liable to be sold again for the use and benefit of the State. By the act of 1823, c. 1189, for the relief of such persons as became purchasers of the Cherokee Lands sold under the authority of the State, it was enacted, that any purchaser or the heirs of any purchaser of a tract so sold might assign and transfer his right under the certificate of his purchase granted by the commissioners, by deed for- good and valuable consideration; and such deed being proved or acknowledged and registered and filed in the office of the Secretary of State, with a certificate from the Treasurer that the purchase money of said tract had been paid to the State, it should be lawful for the Secretary to issue a grant therefor to the assignee, expressing in the grant, that it was made to the grantee by virtue of the assignment of the original purchaser. On the 18th of October, 1820, James Allen became the purchaser of a tract of 100 acres, being section, No. 7, in the 4th District, and, after making payment of the eighth of the purchase money, executed bonds- with security for the payment of the residue in four equal annual instalments of $75 each. Allen after-wards, but it does not appear at what time or on what terms, nor whether he then made any
 
 written
 
 transfer, sold his interest under this purchase, to William Parker, one of the defendants. On the 23rd of September, 1823, William Parker, purchased at the sale by the commissioners a tract of 65rf acres, being the section No. 1, in the same district. It does not appear what was the price at which he bought, but after the payment of the one eighth of the purchase money, he gave his bonds with sureties to secure the payment of the residue. The two first of Allen’s bonds were paid, but the two last remaining unpaid, and the land being liable therefor, Parker, who claimed to be entitled to the benefit of Allen’s purchase, at the December Term, 1828, of Haywood County Court, confessed a judgment to the State for the amount due upon those two last bonds $172 74 cents,
 
 *43
 
 with interest on $150 from the 1st of January, 1829.— Whether
 
 any
 
 of the bonds which Parker had executed to secure the payment of the purchase money of the tract No. 1, were then paid or not, does not appear; but they were not
 
 all
 
 paid until
 
 long
 
 afterwards. Upon the judgment above-mentioned a
 
 Ji. fa.
 
 issued, tested of September Term, 1829, which was levied upon both these tracts, as being the land whereon Parker resided, and Parker’s interest therein; and this levy was returned to Court. From this same term of the Court, there issued also a
 
 fi. fa.
 
 against Parker for a fine of twenty dollars, imposed upon him because of a conviction for some offence and for the costs of prosecution, on which the sheriff returned that he had received $20 in part and had levied on the same tracts for the residue. From December Term, 1829, a
 
 venditioni exponas
 
 issued to sell the lands returned as levied upon under the first mentioned
 
 fi. fa.,
 
 and an
 
 alias ji. fa.
 
 to make the residue unpaid of the fine and costs in the case of the conviction. On the of March, 1830, under these executions, the sheriff exposed to sale the said Parker’s interest in both the tracts, and it was bid off by the plaintiffs at the sum of $31, “ over and above what was due the State thereon,” and the sheriff executed a deed to the plaintiffs for both of them. The plaintiffs have not paid off the judgment nor any part of it, nor paid any part of the debt to the State due for section No. 1; nor does it appear that they paid the sum of thirty one dollars so bid. The Legislature from time to time had been passing acts granting indulgence in the collection of bonds given for the pur-chaseof Cherokee lands; but these acts not applying to judgments, William Parker, at the session of the General Assembly, which was held in December, 1832, applied for indulgence in respect to the judgment against him, and a resolution was passed by the General Assembly, authorising and directing the Public Treasurer to permit William Parker to execute bonds with sureties in discharge thereof. Bonds were given by him accordingly, and, these being finally paid off, on the 28th of August, 1839, a grant issued to James Allen, for the tract No. 7, and he, by the directions of William Parker, in August, 1841, conveyed this tract to
 
 *44
 
 John Parker, son of William, and the other defendant in this action.
 

 By some bargain or agreement between William and ^°^n’ ^le latter paid off what' was due the State, because of William’s purchase of the other tract, section, No. 1, procured a grant from the State therefor in the name of William, on the 5th of January, 1837, and in the following month obtained a deed from William Parker, transferring the title to him.
 

 This bill was filed early in the year 1839. It charges that the executions, under which the plaintiff bought, were levied upon William Parker’s interest in the two tracts by his direction, that they were sold in his presence and with his assent; and insists either that the sheriff’s deed made under such sale conveyed to the plaintiffs all the said Parker’s interest therein; or that the plaintiffs became entitled thereto by virtue of the purchase so made as being
 
 in substance
 
 a purchase from the defendant William, through the intervention of
 
 his
 
 agent the sheriff. It alleges that the resolution of the General Assembly of 1832 was procured by the said Wiliam through fraud, for by virtue of the sale as aforesaid the judgment had in fact been satisfied, and either the plaintiffs or the sheriff were responsible to the State for the amount thereof; it states that the plaintiffs, immediately after the resolution aforesaid, appeared before the commissioner appointed by the Treasurer to take William Parker’s bond, and offered to give their bond with sureties for the amount of the judgment and interest, or to pay up the same, which offers were declined by the said commissioner; avers that they bought both the tracts for the sum of $31, over and above the amount of the judgment against William Parker, and, proffering to pay the same into Court to be disposed of as it shall direct, prays that the defendants may be compelled to make unto the plaintiffs a proper legal title for the two tracts', surrender the possession, and account for the rents and profits thereof. The defendants insist by their answers, that the purchase was made upon the terms of paying off the demands of the State against both tracts and $31 besides; that not one cent was ever paid in any way for or on
 
 *45
 
 account of the said purchase; and that William Parker was compelled in consequence of this default of the plaintiffs to make the best terms he could with the .State, m order to satisfy the outstanding judgment and'the bonds which the State had against him, and having paid them off, through the aid of his son John, had a right to convey and cause to be conveyed the said lands unto his said son.
 

 We see no grounds on which the plaintiffs are entitled to any relief. The interest which William Parker had in these tracts was not liable to be seized under execution, and of consequence did not pass by the sale and conveyance of the sheriff, acting in his official capacity. The legal title remained still in the State — the lands were yet the lands of
 
 the State
 
 — and the interest of Parker therein was not, within the sense of the Stat. of 5th Geo. 2d, or our Act of
 
 1777,
 
 ch. 115,
 
 his
 
 “lands, hereditaments Brother real estate.” Nor was it embraced within the operation of the Act of 1812, ch. 830, “ concerning equitable interests in real and personal estate.” The first section of that act, as has been repeatedly decided, comprehends those cases only where the whole beneficial estate is in the debtor, and nothing remains in the trustee but a
 
 naked
 
 legal estate. Nor is it comprehended within the enactments of the second section of that Act. Were we to admit that this and the preceding section embraced cases where
 
 the State
 
 was the morgagee or trustee — . and also that the interest of William Parker in these tracts was in the nature of an equity of redemption, and therefore fell within the spirit of the provisions of the second section, (questions on which we forbear to express an opinion,) yet it could not be sold under an execution at the instance of the morgagee, for the mortgage debt.
 
 Camp
 
 v
 
 Coxe,
 
 1 Dev. & Bat. 52. The Acts directing the manner of making purchases of these lands, shew that they were
 
 not
 
 to be sold for a failure to make payment of the purchase money. The words are, “ if the money
 
 cannot
 
 be obtained byct
 
 judgment on the bond, the land shall revert to the State.”
 
 Clearly, therefore, the sale of the Allen tract, regarded as a judi eial sale, was inoperative.
 

 
 *46
 
 Whether a mortgagee can sell the equity of redemption in the morgaged tract for
 
 any other debt,
 
 was not decided in
 
 Camp
 
 v
 
 Coree,
 
 nor in any subsequent case. Nor is it now necessary to determiné the question: For the plaintiffs claim as for a single purchase at an entire price, and ask for a conveyance of both the tracts of land, on
 
 the
 
 ground of having bought at execution sale the interest of Wm. Parker in both, as constituting together the land on which he resided. A sale under the 2d section of the Act of 1812, does not, as in the case of a sale under the 1st section, disturb the legal estate. The purchaser becomes but an assignee of the equity so bought; his rights are purely equitable; and his relief must be in equity only. And when he comes into equity for relief, he must establish the case, upon which he asks for relief. The plaintiffs offer to pay the price bid for the interest of Parker in
 
 all
 
 the land, upon having a title made for
 
 all
 
 the land.
 

 The claim of the plaintiffs to be regarded as purchasers from William Parker, through the agency of the sheriff, is founded on the fact which the evidence establishes, that he directed the sheriff to levy on the lands rather than on his personal goods. It is in the nature of a claim for the specific execution of a contract.
 

 They bought, are ready to pay, and pray that the bargain may be decreed to be carried into full effect. To relief upon this ground there are several decisive objections. In the first place, all the evidence tending to shew a contract, shews (if any such there were) a different contract from that alleged. The deposition of the sheriff, and his return on the
 
 venditioni
 
 relied upon by the plaintiffs, concur with the statement in the answers to establish that the plaintiffs engaged to pay $31 besides satisfying what was due the State upon
 
 both the tracts.
 

 In the next plaee, it would be monstrous to aid the plaintiffs in compelling Parker to execute the alleged contract on his part, when they have been faithless as respects the performance of their part of the contract. An essential, the most essential, part of their engagement was to pay off the demands of the State then pressing upon William Parker, to
 
 *47
 
 meet which demands he assented to the sale oí his interest in these tracts. Up to this moment the plaintiffs have utterly failed to perform this engagement. They have not, in fact, paid any part of these demands. It is not shewn that during the period of nine years, which elapsed from the time of their alleged purchase, they made any effort or took any step on their part to fulfil this engagement. The bill alleges, indeed, that, after the resolution of the General Assembly of 1832, in favor of Parker, was passed, they offered to the Commissioners specially appointed by the Treasurer to take
 
 his
 
 bond to pay or secure the payment of the amount
 
 of the judgment.
 
 But this allegation is not admitted by the defendants nor established by proof, and, if it were true, the fact shews that they then knew Parker had lost all expectation of their discharging the judgment, and that they permitted him to go on, in the belief that no relief could be had through them, to make other arrangements for the satisfaction of this judgment. No offer to Parker — or to any one authorized to receive the money, was made to pay this part of the price until the bill was filed. No offer has ever been made to pay another part of the price, the debt due the State because of the purchase money of the section No. 1; and it is not shewn that the plaintiffs have paid the sum of $3-1, which was bid, exclusive of the sums due the State. Such
 
 laches
 
 on the part of the plaintiffs (to use the mildest term which can characterize their conduct) deprives them of all plausible claim upon the interference oí a Court of Equity on their behalf.
 

 The Bill must be dismissed with costs.
 

 Pee, Curian, Decreed accordingly.